THE RALEIGH.[1]

THE NIAGARA.

HARDY *v.* THE RALEIGH and THE NIAGARA.

(*District Court, S. D. New York.* February 20, 1890.)

1. COLLISION—TUG AND TOW AT ANCHOR IN FOG—WANT OF PROPER SIGNALS.
   The tug N., with a fleet of canal-boats in tow, extending from 400 to 800 feet astern, came to anchor in a dense fog in the Hudson river. The N. was assisted by a helper, the E., which was under the N.'s orders, and had proper means for signaling in a fog. The canal-boats had not. *Held,* that it was the duty of the N. to have ordered the E. along-side the tow, to give fog signals, and because of her failure to do so she was liable for the sinking of a boat in her tow by collision with a moving vessel.

2. SAME—FOG—FAULTY NAVIGATION—EXCESSIVE SPEED.
   It is faulty navigation for a vessel to continue her course at a speed of over five miles an hour, unnecessarily in the Hudson river, in a very dense fog, on a course where other vessels are liable to be encountered.

3. SAME—LIBEL FOR PERSONAL INJURIES—DAMAGES.
   Where libelant was nearly drowned by reason of a collision between two vessels, and sustained serious and permanent injuries, *held,* that he should recover $5,000.

In Admiralty. Action for personal injuries.
*Hyland & Zabriskie,* for libelant.
*Lexow & Haldane,* for The Raleigh.
*Owen, Gray & Sturges,* for The Niagara.

BROWN, J. On the morning of May 8, 1889, a little after sunrise, the libelant's canal-boat Heaton, being the port boat on the hawser tier of a fleet of boats attached by a hawser to the steam-tug Niagara, while the fleet was lying at anchor in about the middle of the Hudson river, between Englewood dock and Inwood, was run into by the steam freight-boat Raleigh, in a very dense fog. The Heaton and her cargo were sunk; and the libelant, being carried down with the boat, was nearly drowned. Though revived, he sustained serious, and more or less permanent, bodily injuries.

The contradictions and difficulties presented by the testimony, in many particulars, are remarkable even for a cause of collision. Much consideration of the testimony, however, satisfies me of two faults,—one on the part of each steamer,—which must result in a division of the damages; so that it is unnecessary to dwell upon the other perplexities of the case. The Niagara came to anchor between 1 and 2 o'clock A. M. on account of the density of the fog; and, though afterwards it lightened up for a while, the fog at the time of the collision was so dense that the Heaton could not be seen until the Raleigh was within 50 feet of her,—too late to avoid collision. Assuming that the Niagara was ringing her fog bell every two minutes, as many of her witnesses assert, although as many on the part of the Raleigh testify that no bell was heard until just after

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

the collision, still that was not a sufficient or reasonable protection, in so dense a fog, for a fleet of boats in tow extending from 400 to 800 feet astern of the Niagara. It has been repeatedly held to be obligatory to give some signal from the tow itself, when so far removed from the tug, in a dense fog, as notice of its position. *The Peshtigo*, 25 Fed. Rep. 488; *The City of Alexandria*, 31 Fed. Rep. 427. In the present case the Niagara had a helper, the tug Easton, along-side the tow, under the orders of the Niagara; and there was no difficulty in passing all needful orders to the Easton. The canal-boats had not proper means of signaling, the Easton had; and it was the duty of the Niagara, not of the canal-boats, to see that all signals needful for the full protection of the tow should be given. *The Connecticut*, 103 U. S. 712. Had the Easton given such signals from along-side the tow, they might, perhaps, have been heard, and the collision avoided.

The Raleigh is to blame for continuing her navigation unnecessarily in so dense a fog, where other vessels were liable to be encountered. She should have stopped at the Englewood dock, if not before. Her own witnesses do not claim that at 10 or 15 minutes after 5 o'clock, when she left that dock, then nearly a half hour after sunrise, they could see over 50 yards. There was no constraint or urgency that required the Raleigh to keep on. Her course took her at first nearly across the river, and she was thereby very likely to run afoul of any craft anchored in the stream. If she was entitled to proceed at all, I am satisfied, also, that her speed was excessive, under the circumstances, and much more than her witnesses admit. The collision must have been two-thirds of a mile from the Englewood dock; and their own estimate of the time of collision after leaving the dock, viz., seven to nine minutes, would make her speed about five miles per hour. It was probably more than that. There had been fog for several hours; yet, in coming from Haverstraw, which she left about 3 o'clock, she was not over a half hour behind her usual time at Englewood, though coming in fog, and mostly against a flood-tide.

The libelant's injuries are serious. From a strong and healthy man, he has become, through this collision, apparently a confirmed invalid, and must lead a life of more or less infirmity and suffering. There are some uncertain elements in the case, however; and, upon the whole evidence, I think $5,000 for his personal injuries will be a suitable award. A reference may be taken to compute the other damages; for which, and for the above allowance for injuries, both steamers must be held liable, with costs.